## Irvine Development Company v. Clark.

(Decided June 3, 1921.)

### Appeal from Clark Circuit Court.

1.   Trial—Motion for Directed Verdict.—The court erred in overruling defendant's motion for a directed verdict for the defendant in an action for labor performed by plaintiff where there was no evidence the person at whose instance the work was done was

acting as agent for defendant except the unwarranted conclusion of the plaintiff.

3.  Principal and Agent—Witnesses.—A witness on the issue of agency must state only the facts and circumstances concerning the various transactions, leaving the court or jury to determine whether or not an agency was created, and hence may not give his opinion or state his conclusions as to the existence of the agency or the nature and extent of the agent's authority.

J. T. METCALF, J. C. JONES, J. BARTON RETTEW and MORRIS & JONES for appellant

C. F. SPENCER and COLEMAN MOFFETT for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Reversing.

This is an appeal by the defendant from a judgment for $2,329.50 rendered against it in favor of the plaintiff, now appellee, for labor performed by him in drilling an oil well upon the property of another than the defendant, namely, the New York-Irvine Oil Company, called hereinafter the oil company.

Considerable portions of the briefs are devoted to a discussion of whether or not the petition is a declaration upon an express or an implied contract, but it will not be necessary for us to consider that question because of our conclusion that there is no evidence to sustain either and that the court erred in overruling defendant's motion for a directed verdict made at the conclusion of plaintiff's evidence and renewed after all of the evidence had been heard.

Plaintiff had a written contract with defendant to drill an oil well on the A. S. Pasley lease owned by defendant at $1.50 per linear foot, which contract contained the provision that the defendant was to pay the plaintiff "$50.00 per day in case of any delay in drilling on said lease if said party of the first part (plaintiff) is on the lease and ready to drill and the delay is the cause of the second party (defendant)."

Mr. H. C. Jordon was the resident manager of both the defendant and the oil company, both of which were non-resident corporations. Shortly after plaintiff began to drill the well upon the Pasley lease, operations were stopped by an injunction and Jordon directed plaintiff to move his rig on to the Hiram Reed lease, which was some five or six miles distant from the Pasley lease and was owned by the oil company. Plaintiff drilled two wells

upon the Reed lease and at the direction of Jordon presented his bill therefor to and was paid by the oil company. After the completion of these two wells upon the Reed tract, Jordon directed plaintiff to move his rig to the Wince Friend lease, also owned by the oil company, and to drill a well upon that lease, and it is to recover for the work done by plaintiff upon the Friend lease that he has instituted this action. It is at once apparent that plaintiff was not entitled to recover of the defendant, development company, for the work he performed upon the lease of the oil company, an entirely different corporation, either under an extension of his written contract with the former or upon *quantum meruit,* unless Jordon, who was the agent for both corporations, in directing plaintiff to perform the work was acting as the agent of defendant. There is no evidence whatever that in so doing he was acting as defendant's agent except the bare statement of the plaintiff in answer to a leading question of his own counsel and that this is not true and was so understood by the plaintiff before he drilled the well on the Friend lease is shown beyond doubt by his own testimony. He admits that when he had completed the two wells upon the Reed lease and before he moved to the Friend lease he was directed by Jordon to present his bill for drilling the two wells upon the Reed lease to the oil company; that he did so and that the company paid same by check. He further admits that he knew Jordon was the agent of both companies and that the oil company and not defendant owned the Friend lease; that he asked Jordon to which company he should present his bill for drilling the well upon the Friend lease and was directed to present it to the oil company, which he did, and that he never presented any bill for same to the defendant or suggested in any way to Jordon or the defendant that he was looking to it for payment prior to the institution of this action.

The rule is thoroughly established that neither an agency nor the extent thereof can be established by opinion evidence. It is thus stated in 2 C. J. 948, "A witness on the issue of agency must state only the facts and circumstances concerning the various transactions, leaving the court or jury to determine whether or not an agency was created and hence may not give his opinion or state

his conclusions as to the existence of the agency or the nature and extent of the agent's authority.''

There is therefore absolutely no evidence that Jordon had any authority to bind defendant for work he might order for the oil company, plaintiff does not even so state; and his statement that in so doing Jordon was acting for defendant is proven by his own admissions on the facts to be but an unwarranted conclusion and without probative value.

Hence plaintiff by his evidence did not prove against defendant either an express or an implied contract to pay him for drilling the well upon the Friend lease owned by the oil company. Nor was his case made out by the evidence for the defendant.

Jordon testified that he employed the defendant to perform the work here involved for the oil company and not the defendant, development company, and that he so informed the plaintiff at the time. That this is true is conclusively established by letters introduced by the defendant which plaintiff wrote to Mr. Jordon and to the oil company.

Just after plaintiff moved his rig to the Friend lease and started drilling the well on same he wrote a letter to Mr. Jordon in which he said, among other things: ''What company will I charge the account to? I believe you told me one time but I have forgotten and I have no contract to refer to.'' A few days later he made out a bill to the New York-Irvine Oil Company and mailed it to Mr. Jordon as its agent for the expense of moving his drilling outfit from the Reed to the Friend lease. About a month later he wrote Mr. Jordon a letter which begins, ''Will drop you a few lines to see if you have heard from the New York-Irvine Oil Company. I have not heard from the move bill and I think it is time. I paid out my money a long time ago for them.'' This letter ends with, ''Please give me a reply in regard to the New York-Irvine Co. without delay.'' When he completed drilling the well, he sent his bill therefor and for plugging same to the ''New York-Irvine Company.'' A few weeks still later, he wrote Mr. Jordon another letter in which he said, ''I begin to want to see some money. I have written today to the New York Company, if they don't make me reply I will have to give it to attorney.'' The letter

to the New York Co. above referred to was sent by registered mail and is as follows:

"Furnace, Ky., 5-11-1918.

"New York-Irvine Oil Co.,
   New York, N. Y.,

      "My dear Sirs:

   "A long time ago I sent your man Jordon at Winchester, Ky., the move bill to the Wince Friend farm $1,087.50 later sent him the bill for drilling the well (4/8) $1,242.00 I have called his attention to the fact these bills has not been paid he replies he had written also wired you and it appeared you give it no attention. Please give this your attention and send me check by return mail for the bills $2,329.50 as I will be compelled to put it in attorney's hands for collection.

"Yours truly, H. W. Clark."

Great stress is laid by counsel for plaintiff upon the fact that he refused to sign a written contract with the New York-Irvine Oil Co. for drilling the wells upon the Reed lease which Mr. Jordon delivered to him in duplicate while he was drilling those wells. It is insisted that his refusal to sign this contract was notice to the defendant through its agent Jordon that he was unwilling to perform work for the oil company, but even if this were true, that fact would not be sufficient to charge defendant for work that plaintiff was performing upon the property of another and not under contract with or by direction of defendant or Jordon as its agent.

Equally unfounded is the contention that the work done by plaintiff on the Friend lease as directed by Jordon was done for defendant under an authorized extention of the written contract with reference to the Pasley lease. The sum of the argument in support of this contention is that the provision in that contract quoted above for the payment by defendant of $50.00 per day during any delay for which plaintiff was not responsible authorized Jordon to employ plaintiff's time for defendant during the delay occasioned by the injunction and that he was so acting when he directed plaintiff to drill the wells on the Reed and Friend leases or at least that plaintiff was justified in so assuming. Obviously, however, such a provision and any contingency that might arise thereunder could not possibly be construed into an authority

for Jordon to employ plaintiff to perform work for another than the defendant. But even if such an extension of the contract might be presumed as to the work done on the Reed tract upon the assumption that plaintiff reasonably believed he was there for defendant and by its consent, which is not true of course, it could not possibly apply to work done on the Friend lease because plaintiff knew before he left the Reed lease that he was working for the oil company and not defendant.

Wherefore the judgment is reversed and the cause remanded for another trial consistent herewith.